UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LAUREEN M. RYAN, TRUSTEE | : | |
| Chapter 11 Trustee of the Estate | : | |
| of Raymark Industries, Inc., | : | |
| Plaintiff, | : | |
| | : | |
| V. | : | No. 3-00-CV-1854(DJS) |
| | : | |
| SULLIVAN, HILL, LEWIN, REZ, | : | |
| ENGEL AND LABAZZO, et al., | : | |
| Defendants. | : | |

MEMORANDUM OF DECISION

Plaintiff Laureen M. Ryan, ("Trustee") Trustee of the Chapter 11 bankruptcy estate of

Raymark Industries, Inc., ("Raymark") has brought the present action against defendant lawyers

Andrew Constantine, II ("Constantine"); Bjork Lawrence Poeschl & Kohn ("Bjork"); Sullivan,

Hill, Lewis, Rez, Engel & LaBazzo ("Sullivan"); Nelson Mullins Riley & Scarborough L.L.P.

("Nelson"); The Tom Riley Law Firm, PLC ("Riley"); William Skepnek ("Skepnek"); Skepnek

& Maddox ("Maddox"); Thomas McNaboe ("McNaboe"); Spohrer, Wilner, Maxwell,

Maciejewski & Matthews, PA ("Spohrer"); Butera, Beausang, Cohen & Brennan ("Butera");

Bell, Boyd & Lloyd ("Bell")[1]; and Wright & Coon, PA ("Wright").  The Trustee seeks to reclaim

monies paid to some or all of the defendants on three separate occasions. First, Raymark paid, to

six defendants, $6,000,000 in retainer fees that the Trustee claims were either not equal in value

to the services received or were intended to defraud creditors. Second, Raymark made payments

_____

[1]Bell has since settled with the Trustee and was dismissed as a party on February 24,
2004.

to certain defendants within 90 days of the bankruptcy filing that are allegedly voidable as preferential transfers. Finally, the Trustee seeks to recover more than $1,500,000 in promissory notes given to certain defendants as part of a complicated loan transaction.

Now pending before the court are cross-motions for summary judgment on a single issue. Plaintiff **[doc. #16]** seeks a declaration that the proceeds of the settlement between Raymark and the Connecticut Insurance Guaranty Association ("CIGA") constitute property of the estate pursuant to 11 U.S.C. §541. The Trustee seeks summary judgment on this issue only against Constantine, Bjork, Skepnek, Sullivan, Nelson, Riley, Spohrer, Wright, Maddox and McNaboe (collectively "Defendants" or "Sullivan"). Defendants, except for Wright and Spohrer, filed a cross-motion for summary judgment **[doc. #13]** alleging that the settlement proceeds (hereafter the "CIGA Fund") are, in fact, a trust and so are not part of the bankruptcy estate pursuant to 11 U.S.C. §541.

Defendants also motion the court to dismiss plaintiff's claims **[doc. #13]**. The Trustee, according to Defendants, has no standing under the federal bankruptcy laws to bring the avoidance action. Alternately, if the Trustee does have standing, Defendants argue that her claims must be dismissed because the applicable fraudulent transfer law permits recovery of only those funds that are property of the debtor and a trust held by the debtor for a third party is not property of the debtor.

### STANDARD OF REVIEW

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" American Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975)).

A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Id.

The standard for reviewing a motion to dismiss under Rule 12(b)(1) or a motion for judgment on the pleadings under Rule 12(c) is similar to the standard under Rule 56. The court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor. Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001). The case will not be dismissed unless the complaint cannot state any set of facts that would entitle the plaintiff to relief. Id. at 126.

## FACTS

The parties have stipulated to the following facts. Raymark, formerly known as Raybestos Manhattan, manufactured and sold a variety of products that contained asbestos. Raymark held six liability insurance policies issued by Transit Casualty Company ("Transit") totaling $32,000,000 in liability coverage. The policies covered the years 1979, 1980, 1981 and 1982 (the "Transit Policies").  Transit was declared insolvent in December 1985. Raymark sought recovery of the value of the Transit Policies against the Connecticut Insurance Guaranty Association ("CIGA"), an unincorporated non-profit created by Conn.Gen.Stat. §38-276 (now Conn.Gen.Stat. §38a-836) for the purpose of providing a resource for persons insured by or having claims against policies issued by an insurance company that has become insolvent. CIGA and Raymark litigated Raymark's claim in Connecticut state courts, where CIGA sought a declaratory judgment concerning its obligations under the Transit Policies.

The dispute between CIGA and Raymark was stayed on February 10, 1989 when Raymark declared bankruptcy. The litigation was later permitted to continue in the United States Bankruptcy Court for the Eastern District of Pennsylvania. The CIGA litigation was settled during the pendency of the bankruptcy action and a Settlement Agreement (the "Agreement") was signed. The Agreement provided that CIGA would pay $25,000,000 to Raymark (the "Settlement Proceeds") for use in the manner specified in the final order of the bankruptcy court. The final order approving the settlement established the following: 1) the settlement proceeds could not be disbursed until approval by the bankruptcy court; 2) all disputes regarding the disbursement of the Settlement Proceeds would remain subject to the jurisdiction of the bankruptcy court; 3) all claims arising out of the Transit Policies would be attached solely to the

Settlement Proceeds, with certain restrictions. The Proceeds could be used only to pay or defend tort and other claims arising under the Transit Policies.

The final order was modified by a ruling of the bankruptcy court on August 9, 1996. The Modified Final Order (hereafter "Modified Order" or "Order") superceded the terms that originally governed the use of the CIGA Fund. The Order instructs Raymark to use the Fund solely in accordance with the terms and conditions of the Transit Policies. Further, the Fund could be used only to pay or defend claims of tort and other claimants arising under the Transit Policies. Finally, the court ordered that $2,000,000 of the Fund allocated to cover the value of Transit Policy FXS 960-000 was limited in use to payment of claims brought under Policy FXS 960-000 and was not to be used to cover any other claims or any defense costs related to the Transit Policies. This order remains in effect today.

The bankruptcy court dismissed the 1989 Raymark bankruptcy action on August 9, 1996 and Raymark was paid $25,000,000 by CIGA. The dismissal of the bankruptcy proceeding removed Raymark's protection from asbestos personal injury claims. Raymark anticipated the filing of many new claims and began, in August 1996, to engage attorneys around the country as defense counsel to the expected lawsuits. Defendants Bjork, Constantine, Skepnek, Nelson, McNaboe and Riley were designated the National Trial Team for Raymark. Sullivan was also retained during the same time period. The firms signed comprehensive contracts with Raymark that included detailed fee provisions. Sullivan, Skepnek, Nelson, McNaboe and Riley were each paid a $1,000,000 retainer, followed by fixed quarterly fees and other lump sum payments. Bjork was paid a quarterly fee of $240,000.  The payments were made from the CIGA Fund.

Raymark made a loan (the "III Loan") of $8,500,000 to Investors International, Inc. ("III") on May 1, 1997. The loan was cancelled on March 8, 1998 and refinanced to permit III to pay its debt by remitting designated sums to Defendants in lieu of direct payment to Raymark. Approximately $1,500,000 in promissory notes were given to Bjork, Nelson, McNaboe, Maddox and Constantine, ostensibly as repayment of III's debt to Raymark. The parties have not stipulated that the CIGA Fund was the source of the III Loan.

Raymark filed a second bankruptcy petition on March 18, 1998. The Trustee was appointed on October 15, 1998. Plaintiff commenced actions against the Defendants individually and the cases were consolidated by order of this court on November 20, 2001.

## DISCUSSION

Pending before this court are four motions joined by a single question of law: is the CIGA Fund property of the estate pursuant to 11 U.S.C. §541?  Defendants claim that the Fund is a trust excluded by law from the estate. Sullivan also seeks to dismiss plaintiff's case for reasons that are difficult to separate from the central question regarding the CIGA Fund. Defendants claim first that the Trustee lacks standing to bring a fraudulent transfer recovery action on behalf of only a sub-class of creditors, as would necessarily be the case if the CIGA Fund is a trust with a limited group of beneficiaries. Second, Defendants argue that Connecticut fraudulent transfer law requires a showing that the property to be recovered was property of the debtor such that the subject transfer diminished the assets of the estate available for distribution to creditors. The CIGA Fund, if it is in fact a trust, would not be available to creditors and so would not be part of the estate for purposes of Connecticut fraudulent transfer law. Defendants motion the court to

-6-

both dismiss plaintiff's case and grant summary judgment in their favor on the property of the estate question.

The Trustee has submitted her own motion for summary judgment. Plaintiff seeks summary judgment on the status of the CIGA Fund under §541. The Trustee contends that the Fund is property of the estate that may be recovered by her for purposes of distribution to all potential creditors. She opposes the motions to dismiss for lack of standing and for failure to state a claim under Connecticut fraudulent transfer law.

Defendants's motion to dismiss for lack of standing is based on a particular interpretation of 11 U.S.C. §544(b). The court will first address defendants's claim regarding that statutory provision and then decide if the Trustee has standing. Assuming that the Trustee has standing, the court will turn to the cross-motions for summary judgment on the question of the CIGA Fund. Finally, the court will address Defendants' motion to dismiss for failure to state a claim under Connecticut fraudulent transfer law.

**1. Defendants's Motion to Dismiss for Lack of Standing**

Defendants argue that the Trustee lacks standing to pursue her claim under 11 U.S.C. §544(b). Sullivan contends that a trustee may only bring a creditor's avoidance claim under §544(b) when the benefits of the action inure to all creditors ratably. The court concludes that this is not a tenable reading of §544(b) and holds that Ryan has standing to bring her claim.

Defendants base their interpretation of §544(b) on a bankruptcy court opinion rendered at Hirsch v. Marinelli, 168 B.R. 506, 510-511 (Bnkr.D.Conn. 1994). The Marinelli court held that a trustee lacked standing under §544(b) to bring an avoidance claim predicated on the special

statutory rights accorded the Federal Deposit Insurance Corporation ("FDIC") by 12 U.S.C. §1821(d)(17).  "A trustee has standing to assert causes of action under §544(b) only if the benefits of the action inure to all creditors ratably. This limitation is not apparent from the language of §544(b) itself, but is nevertheless a settled bankruptcy doctrine, not modified by the enactment of the Bankruptcy Code of 1978, as amended." Marinelli, 168 B.R. at 510-511. The court based its reading of §544(b) on the legal principle established in Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416 (1972). This court finds the Marinelli decision to be an inaccurate interpretation of §544(b) and a misreading of the Caplin principle as it applies to §544 of the Bankruptcy Code.

The majority interpretation of §544(b) is that it permits a trustee to "avoid transfers that are avoidable under state law if there is at least one creditor at the time who has standing under state law to challenge the transfer." Wieboldt Stores, Inc. v. Schottenstein, 94 B.R. 488, 506 (N.D.Ill. 1988). Section 544(b) provides that "a trustee may *avoid any transfer* of an interest of the debtor in property or any obligation incurred by the debtor that is avoidable under applicable law by *a creditor holding an unsecured claim* that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." 11 U.S.C. §544(b)(emphasis added). The language of this provision is very plain. A trustee may avoid any transfer held by a creditor, subject to the listed conditions. The phrase "a creditor" is clearly singular and there is absolutely no textual basis for an interpretation of §544(b) that understands it to require a claim held by multiple creditors, much less all creditors. Unquestionably, there is no textual basis for concluding that a §544(b) claim must result in benefits ratable to each and every creditor–language related to the eventual distribution of benefits is nowhere part of the section.

This court should not, as it necessarily would it if adopts the statutory interpretation of <u>Marinelli</u>, re-write the Bankruptcy Code. Federal courts are not licensed to "usurp the policy-making and legislative functions of duly elected representatives." <u>Heckler v. Mathews</u>, 465 U.S. 728, 741 (1984). The statutory construction of <u>Marinelli</u> lacks the necessary textual support and this court will not adopt a similar interpretation.

Arguably this court is bound by <u>Caplin</u>, and Defendants claim, echoing <u>Marinelli</u>, that <u>Caplin</u> dictates their interpretation of §544(b). A close reading of <u>Caplin</u> and the principle of law it articulates reveals that <u>Caplin</u> neither affects nor is it altered by the terms of §544(b). The Supreme Court held in <u>Caplin</u> that a trustee does not have general authority to bring an action to recover damages arising out of creditor's claims. <u>Caplin</u>, 406 U.S. at 434. This holding has been reduced to an axiom of bankruptcy law, that the "trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." <u>Shearson Lehman Hutton, Inc. v. Wagoner</u>, 944 F.2d 114, 118 (2d Cir. 1991). The key issue for this action is the meaning of "claims" in <u>Caplin</u> and the decisions applying its holding subsequent to the enactment of the Bankruptcy Code. _____

_____ <u>Caplin</u> dealt with claims of a creditor for damages arising out of actions taken by the debtor and a third-party. The trustee in <u>Caplin</u> sought to recover, for the estate, the common law damages alleged by a creditor against the third-party. Thus, a "claim" under <u>Caplin</u> is a claim that might be brought by a creditor against a third-party as an independent action for damages. Later cases applying <u>Caplin</u> have, almost uniformly, dealt with similar situations. <u>See</u>, <u>Shearson Lehman</u>, 944 F.2d at 120 (holding that a trustee had no power to bring creditor's tort claims for breach of fiduciary duty against third-parties); <u>Hirsch v. Arthur Anderson</u>, 72 F.3d 1085 (2d Cir.

1995)(holding that a trustee had no standing to bring claims based on the distribution of

misleading information to investors and the provision of deficient professional services);

Mediators Inc. v. Manney, 105 F.3d 822, 826 (2d Cir. 1997) (holding that a bankruptcy trustee

had no standing to bring a creditor's claim for breach of fiduciary duty).[2]  None of these

decisions involved a claim for avoidance under a state fraudulent transfer law. Further, none of

these courts considered or interpreted §544(b). These precedents have only limited value as

guidance for this decision.

Caplin has been extended to interpretations of §544(a), which has been held not to grant a

trustee the power to bring creditor's claims against third parties. See, Shadduck v. Shadduck, 208

B.R. 1, 4-5 (Bnkr.D.Mass. 1997)(citing cases and holding that a trustee has no power to seek a

new judgment lien on behalf of creditors, but under §544(a) may only enforce a pre-existing

lien.) The Shadduck court noted that Caplin specifically does not affect the interpretation of

§544(b), as that section "clearly grants avoidance rights." Shadduck, 208 B.R. at 5. Here, unlike

in Shadduck, the trustee is bringing an avoidance claim and there is a specific statutory authority

for the action.

The Marinelli court did deny standing for a trustee to bring an avoidance claim, but the

factual circumstances of that case were very different from the present action. The trustee in

Marinelli did not seek to bring a general, state law avoidance action that might theoretically be

raised by any creditor but rather sought to vindicate, on behalf of the FDIC as a creditor, an

---

[2]Another case relied on by defendants, Still v. Congress Financial Corp., 102 B.R. 132
(Bnkr. E.D.Tenn. 1989), fits the Shearson Lehman model. The Still court held that the trustee
had no standing to bring claims alleging damages to potential creditors as a result of violations of
the Fair Labor Standards Act. The Still ruling has no application to this decision.

avoidance right that inured solely to the FDIC pursuant to a federal statute. Arguably, the FDIC's

claim in <u>Marinelli</u> was more like a third-party claim and less like an avoidance action, and the

court relied on that distinction in its decision. Regardless, there is no unique cause of action in

this case that might warrant application of either <u>Marinelli</u> or <u>Caplin</u>, and the court will not abuse

the language of §544(b) in the manner desired by the defendants. Plaintiff has standing to bring

an avoidance claim under 11 U.S.C. §544(b) and Connecticut General Statute §§52-552e–552f.


**2. The Cross-Motions for Summary Judgment**

The conclusion that the Trustee has standing to pursue her avoidance claim does not

resolve the status of the CIGA Fund under 11 U.S.C. §541. The court requested briefs from the

parties on the question of whether the CIGA funds are property of the estate, and will now

consider the pending cross-motions for summary judgment on this issue.

Defendants seek summary judgment on the ground that the CIGA Fund created pursuant

to the 1994 Settlement Agreement and the 1996 Modified Order is an express trust and so

exempt from the debtor's estate. Plaintiff, conversely, argues that the Fund is nothing more than

the proceeds from an insurance contract and that such proceeds are considered part of the

debtor's estate. The Trustee also contends that the CIGA Fund is part of the estate because

Raymark is a beneficiary of the Fund, permitting her to stand in Raymark's own shoes and claim

the money. The court will first address the defendant's motion for summary judgment and then

consider the plaintiff's claims.

**A. Defendants' Motion for Summary Judgment**

Defendants argue that the CIGA Fund is a trust and therefore not property of the estate under the Bankruptcy Code. Property of the bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1). This provision is broad in scope and should be construed accordingly. United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n.9 (1983). Some property may be excluded from the estate according to certain limited and specified exemptions. "Property of the estate does not include any power that the debtor may exercise solely for the benefit of an entity other than the debtor." 11 U.S.C. §541(b)(1). The terms of §541(b)(1) are taken to exclude "property owned by a third party but held in trust by the debtor." Whiting Pools, 462 U.S. at 205 n.10. Generally, all interests of a debtor in property become property of the estate "notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law that restricts or conditions transfer of such interest by the debtor." 11 U.S.C. §541(c)(1)(A). Restrictions on the transfer of a debtor's beneficial interest in a trust enforceable under applicable nonbankruptcy law remain enforceable. 11 U.S.C. §541(c)(2). Finally, "property in which the debtor holds, as of the commencement of the case, only legal title and not equitable interest…becomes property of the estate…only to the extent of the debtor's legal title to such property but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. §541(d).

The provisions of §541 make clear that if the debtor's interest in the trust is solely that of trustee, the trust is not property of the estate. Assuming that the debtor is also a beneficiary of the trust, the trust will be considered part of the estate unless enforceable restrictions created by nonbankruptcy law apply to the debtor's right to transfer or receive his interest. The courts have

not conclusively determined what type or scope of restriction is sufficient to remove the trust

from the estate when the debtor has beneficiary rights, although an explicit bar on transfer of the

debtor's interest, the classic spendthrift trust, will always exclude the trust. See, Morter v. Farm

Credit Services, 937 F.2d 354, 357 (7th Cir. 1991)(citing cases and discussing issue of when a

debtor's rights to payments from a retirement plan with transfer restrictions is treated as a trust

and excluded from the bankruptcy estate.) "The existence and nature of a debtor's interest, and

correspondingly the estate's interest, in property is determined by state law." In re Howard's

Appliance Corp., 874 F.2d 88, 93 (2d Cir. 1989).

Connecticut law requires a showing of three elements to prove the existence of an express

trust: (1) a trust res; (2) a fiduciary relationship between a trustee and a beneficiary requiring the

trustee to deal with the trust res for the benefit of the beneficiary; and (3) the manifestation of an

intent to create a trust. Goytizolo v. Moore, 27 Conn.App. 22, 25 (Conn.App.Ct. 1992). "A

simple conveyance of property to one upon trust for another, without further specifications or

directions is a simple trust." Id. (citing Cone v. Dunham, 59 Conn. 145, 157 (1890)). "A trust

may be created even though the settlor does not use the word 'trust.'" In re Carrozzella &

Richardson, 237 B.R. 536, 541 (Bnkr. D. Conn. 1999). The intention of the settlor must be

externally expressed, but it need not be evidenced by words; rather it may be discerned solely

from the conduct of the settlor in light of all the circumstances. Id.

The first prong of the Goytizolo test is easily satisfied in this case. The parties do not

dispute that there is a fixed sum of $25,000,000 in the CIGA Fund. The second prong is not as

clearly met based on the facts presented. A trust needs a fiduciary relationship between the

trustee and the beneficiary, requiring the trustee to deal with the res for the benefit of the

beneficiary. The intention of the alleged settlor in this case, CIGA, was expressed in words and

the court will consider the language regarding uses of the Fund to determine if a trust was

created.

Two documents govern the use of the CIGA Fund. The stipulation regarding the Fund in

the Settlement Agreement does not establish either a trustee or a beneficiary.[3] The Modified

Order contains the following requirements:

> "4. Upon this case being dismissed, Raymark may use the Settlement Proceeds for
> the purposes specified in this Order.
>
> 5. Raymark shall utilize the Settlement Proceeds solely in accordance with the
> terms and conditions of the Transit Policies.
>
> 6. The Settlement Proceeds shall be used by Raymark only to pay or defend the
> claims of Tort Claimants and other claims arising under the Transit Policies,
> except that $2 million of the Settlement Proceeds paid pursuant to Transit Policy
> FXS 960000 shall be used only to pay the claims of Tort Claimants and other
> claims arising under such Policy and shall not be used to pay defense costs."

Defendants argue that these provisions establish a trust with Raymark as trustee and all

potential tort claimants and defense lawyers hired by Raymark as beneficiaries. The court does

not agree. "A trust is not created unless there is a beneficiary who is definitely ascertained at the

time of the creation of the trust or definitely ascertainable within the period of the rule against

perpetuities." Restatement (Second) of Trusts (1959) §112. A close reading of the Modified

Order shows that there is no fiduciary relationship established between Raymark and any

---

[3] Paragraph 3 of the Settlement Agreement reads: "Payments by CIGA. After entry of a
final order of the Bankruptcy Court, which is in the form attached as Exhibit 1,…[t]he Debtor
[Raymark] will use the $25 million as provided in such final order." The only instruction here is
to abide by the order of the Bankruptcy Court.

discernable party. Raymark is under no obligation to deal with the alleged trust for the benefit of any identifiable beneficiary.

The court can easily envision a person capable of claiming some share of the CIGA Fund, but Raymark is not obligated to ensure that any portion of the Fund is available for that person or for any other potential claimant. Raymark is obligated to spend the Fund in accord with the court's order, but it may do so at its own pleasure and to satisfy its own corporate needs as they relate to the potential claims against the Transit Policies. There is nothing in the Order that would prevent Raymark from reimbursing itself for monies spent either to pay claims or to defend claims. Further, the Order does not define "defend" in any fashion. Raymark's decision to hire numerous lawyers for expensive retainers is an obvious way to defend claims, but the company could as easily have hired no lawyers, or one lawyer, or spent the Fund on its own employees' salaries to cover the cost of work done in-house to prepare for discovery in suits arising under the Transit Policies. Indeed, if Raymark had spent the entirety of the Fund on employee pay, the court can find no lawyer and no personal injury plaintiff that could make a legitimate claim against Raymark for misuse of the alleged res. The absence of any fiduciary obligation on the part of Raymark, as the alleged trustee, to deal with the res on behalf of any alleged beneficiary is necessarily fatal to Defendants' contention that the Fund is a trust under Connecticut law.

The Modified Order gives Raymark a clear set of rules regarding the purpose of the CIGA Fund but no instruction at all as to the recipients of the Fund. "Where the owner of property transfers it in trust for indefinite or general purposes, not limited to charitable purposes, no enforceable trust is created." Restatement (Second) of Torts §123 (1959). As noted, Raymark may give as much or as little of the Fund to anyone it chooses, so long as the expenditure is

consistent with the general uses established in the Order. There is no person excluded from a portion of the Fund and no person entitled to any amount of the $25,000,000 unless Raymark decides that the expenditure is consistent with the Order. "If property is transferred to a person to be disposed of by him in any manner or to any person he may select, no trust is created and the transferee takes the property for his own benefit." Restatement (Second) of Trusts §125 (1959). Ultimately Raymark decides both eligibility for the Fund and disposition of the Fund, without any obligation to any purported beneficiary. Defendants to this action could not, for example, challenge Raymark's decision to pay any one of them all or none of the Fund. Similarly, no potential Tort claimant can challenge Raymark's decision to spend all of the money on liability defense. The absence of any restriction on Raymark's disposition of the Fund is further evidence that no trust exists.

Defendants' argue that the class is merely large and not indefinite. They cite §120 of the Restatement (Second) for the proposition that "[a] trust may be created for the benefit of the members of a definite class of persons although by the terms of the trust the trustee or another person is authorized to select which members of the class shall take and in what proportions." Restatement (Second) of Trusts §120 (1959). Defendants miss the key point that the trust may empower the trustee to choose the *members* of the class, not the existence of the class itself. Raymark is not merely choosing among members of a class according to some rule, but may control, without restriction, the very creation of a class. The scope of a potential class is admittedly limited by the Order, but only in a general fashion. Raymark has the power to determine not only the members of any class of beneficiaries but also whether any beneficiaries will even exist. A trust does not exist when the alleged trustee has such powers.

-16-

The finding that no trust was created because Raymark has no fiduciary obligations applies to only a portion–$23,000,000–of the Fund. The Modified Order sets aside $2,000,000 –theoretically paid pursuant to Transit Policy FXS 960-000–for use solely in payment of the claims arising under one specified policy. This language in Paragraph No. 6 of the Order is much more definite and limited than the remainder of that provision. Transit Policy FXS 960-000 was effective from December 31, 1978 to December 31, 1979. Arguably the $2,000,000 identified in Paragraph No. 6 was held in trust by Raymark for the benefit of those claimants entitled to recover under that policy.

A review of the Settlement Agreement reveals, however, that the alleged FXS 960-000 trust fails for a different reason under Connecticut law. The first requirement of a trust is a trust res and that is not present here. Pursuant to the terms of the Settlement Agreement entered into by Raymark and CIGA, no money from the $25,000,000 payment was allocated to the 1979 FXS policy. Paragraph No. 4 of the Agreement reads:

Allocation of Payments under Transit Policies. The $25 million paid by
CIGA will be allocated among the six Transit Policies in the following amounts:

| Coverage Period and Transit Policy Number | Policy Limit (millions) | Amount Allocated (millions) |
|---|---|---|
| 1979 FXS 960000 | $ 2.0 | $  0.0 |
| 1980 SCU 955377 | 5.0 | 0.0 |
| 1980 SCU 955378 | 5.0 | 5.0 |
| 1981 SCU 955730 | 5.0 | 5.0 |
| 1981 SCU 955731 | 5.0 | 5.0 |
| 1982 SCU 956133 | 10.0 | 10.0 |

The import of this table is unmistakable. No money from the CIGA Fund was ever allocated to cover claims arising under the 1979 FXS policy. The $25,000,000 is available only

-17-

to cover some of the 1980, 1981 and 1982 policies. The court does not know, and the parties do not explain, the purpose of the provision at the end of Paragraph No. 6 of the Order regarding the FXS policy, but in the absence of a trust res this court cannot give it effect. Raymark could not have held the $2,000,000 in trust because there was never any money to hold.

The court holds that the CIGA Fund is not a trust pursuant to Connecticut law. Raymark has no fiduciary obligation to use the Fund for the benefit of any discernable beneficiary. The Modified Order conditions the possible uses of the Fund but does nothing to establish a class of beneficiaries or in any way limit Raymark's decisions regarding expenditures from the Fund, so long as those decisions are consistent with the general purposes of the Order. Further, the portion of the Modified Order that might create a trust does so regarding a Transit Policy for which no CIGA Funds exist. The entire $25,000,000 in the CIGA Fund is not excluded from the bankruptcy estate pursuant to 11 U.S.C. §§541(b)-(d). The Defendants's motion for summary judgment is denied.

**B. Plaintiff's Motion for Summary Judgment**

The court's holding that the CIGA Fund is not a trust under Connecticut law does not necessarily require a holding that the Fund is property of the estate. Plaintiff's motion for summary judgment has two arguments. First, the Trustee contends that the CIGA Fund, as the proceeds of a liability insurance policy, are considered property of the estate. Second, Plaintiff argues that the Fund is part of the estate pursuant to 11 U.S.C. §541(a)(1) because Raymark has the necessary legal and equitable interest as a potential recipient of the money.

The majority of opinions consider insurance proceeds to be part of the estate, although the courts are divided regarding the proper test for resolving the issue. See, Tringali v. Hathaway

Machinery Co., Inc., 796 F.2d 553 (1ˢᵗ Cir. 1986)(holding that a debtor's interest in a liability insurance policy always fits within the definition of debtor's property under 11 U.S.C. §541(a)(1)); but see, Houston v. Edgeworth (In Re Edgeworth), 993 F.2d 51 (5ᵗʰ Cir. 1993)(holding that insurance proceeds may be part of the debtor's estate based on an inquiry into whether the proceeds may inure to the debtor's direct pecuniary benefit.) The Second Circuit has not determined which approach, that of Tringali or Edgeworth, the courts of this circuit should follow, although a leading bankruptcy court decision from New York was embraced by Tringali. See, Johns-Manville Corp. v. Asbestos Litigation Group (In Re Johns-Manville Corp.), 26 B.R. 420 (Bankr.S.D.N.Y. 1983).

The court will reserve any judgment on the insurance proceeds question as unnecessary at this time. The parties acknowledge, and the court finds, that Raymark has both a legal and equitable interest in the CIGA Fund. There is no requirement in the Order that Raymark spend a penny of the Fund on any specified group of potential creditors or claimants. Raymark may, consistent with the Modified Order, choose to use the Fund solely to pay its own expenses related to the defense of any potential claims or as a source of reimbursement for general funds spent in accord with the Order; therefore the court finds that Raymark has both a legal and an equitable interest in the Fund. As all legal and equitable interests of the debtor in property as of the filing of the bankruptcy become part of the estate, the CIGA Fund is part of the bankruptcy estate. The Trustee's motion for summary judgment is granted.

**3. The Defendants' Second Motion to Dismiss**

Defendants raise a second ground for dismissal in association with their motion for summary judgment. According to Sullivan, Connecticut law only permits recovery of an alleged fraudulent transfer if the subject transfer diminished the assets of the debtor available for distribution to creditors. See, In re Kennedy, 279 B.R. 455 (Bnkr. D. Conn. 2002). Defendants reason that because the CIGA Fund was a trust, the money recovered would not be available for distribution to creditors but instead could only be distributed to the trust's beneficiaries. See, Begier v. Internal Revenue Service, 496 U.S. 53 (1990). Neither party briefed this issue in full–indeed, even defendant only referred to it as part of an argument regarding the status of the CIGA Fund. The claim was also made without the benefit of the court's ruling today and the parties' arguments do not reflect the court's holding that the CIGA Fund is not a trust. The court does not here decide whether the Fund money is, in fact, recoverable under Connecticut law and the Bankruptcy Code. The motion to dismiss is denied without prejudice as to the recoverability of the Fund under Connecticut fraudulent transfer law. Defendants may raise the issue again at the appropriate time for the filing of dispositive motions.

## CONCLUSION

The court holds that the CIGA Fund is not a trust pursuant to Connecticut law. Raymark has both a legal and equitable interest in the Fund and therefore, pursuant to 11 U.S.C. §541(a)(1) the CIGA Fund is property of the estate. Plaintiff's motion for summary judgment **[doc. #16]** is **GRANTED**. Defendants' motion for summary judgment **[doc. #13]** is **DENIED**. Defendants also raise two motions to dismiss. The court holds that the terms of 11 U.S.C.

-20-

§544(b) do not require that the potentially recovered property benefit all unsecured creditors ratably in order for the Trustee to have standing. The motion to dismiss **[doc. #13]** is **DENIED**. Finally, Defendants seek to dismiss Plaintiff's claims as untenable under Connecticut fraudulent transfer law. The court reserves judgment on this issue and denies without prejudice any motion on that point.

       **IT IS SO ORDERED** at Hartford, Connecticut, this __14th__ day of October, 2004.


_____
                     **/s/DJS**
            **DOMINIC J. SQUATRITO**
       **UNITED STATES DISTRICT JUDGE**