UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAUREN M. RYAN,<br>CHAPTER 11 TRUSTEE OF THE<br>ESTATE OF RAYMARK INDUSTRIES,<br>    Plaintiff,<br><br>v.<br><br>SULLIVAN, HILL, LEWIN, REZ<br>ENGEL AND LABAZZO, et al.,<br>    Defendant. | CIVIL ACTION NO.<br><br>No. 3-00-CV-1854(DJS)<br><br><br><br>OCTOBER 29, 2004 |

MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR RECONSIDERATION

Defendants Sullivan, Hill, Lewin, Rez, Engel and Labazzo ("Sullivan Hill"); Nelson, Mullins, Riley and Scarborough, L.L.P. ("Nelson Mullins"); and Tom Riley Law Firm, P.L.C. ("Riley") submit this Memorandum of Law in support of their Motion for Reconsideration (the "Motion") filed contemporaneously herewith, and respectfully represent and allege as follows:

**I. BACKGROUND**

A.  **Procedural History and Posture.**

Plaintiff, Laureen M. Ryan, Chapter 11 Trustee of the estate of Raymark Industries (the "Trustee"), brought the above captioned action to avoid and recover nonrefundable retainers and other attorneys' fees that the Debtor, Raymark Industries, Inc. ("Raymark"), had paid to Sullivan Hill, Nelson Mullins, Riley and other law firms that Raymark had engaged between 1996 and 1998 to defend asbestos personal injury claims. The Trustee commenced this action in the United States Bankruptcy Court for the District of Connecticut on March 16, 2000. This Court

withdrew the reference as to the action on September 28, 2000, and, on November 20, 2001, consolidated this action with nine other avoidance actions brought by the Trustee (the "Consolidated Actions"), designating this action the lead case.

Pursuant to orders of this Court, the parties to the Consolidated Actions jointly stipulated as to the facts relevant to certain questions of law and filed cross motions for summary judgment on those questions of law. The joint stipulation of facts (the "Stipulation") and the parties' respective dispositive motions and supporting memoranda were filed on July 8, 2002. Defendants in the Consolidated Actions moved jointly[1] for summary judgment on the grounds that the CIGA funds were not property of the estate and, in the alternative, for dismissal, on the grounds that the Trustee lacks standing to prosecute the avoidance claims she pursues in the Consolidated Actions. Additional briefs were filed on August 30, 2002 and on September 27, 2002. This Court's Memorandum of Decision, dated October 14, 2004 (the "Decision"), denied the Defendants' joint motions to dismiss and for summary judgment and granted summary judgment to the Trustee. With this Motion, Sullivan Hill, Nelson Mullins and Riley (collectively, the "Movants") respectfully ask this Court to reconsider its denial of their motion to dismiss and its holding that "the terms of 11 U.S.C. § 544(b) do not require that the potentially

---

[1] The signatories to the Defendants' Joint Motion to Dismiss or, in the Alternative for Summary Judgment (the "Defendants' Joint Motion") were: Sullivan, Hill, Lewis, Rez, Engel & Labazzo; Nelson Mullins Riley & Scarborough L.L.P.; The Tom Riley Law Firm, P.L.C; Bjork Lawrence Poeschl & Kohn; Skepnek & Maddox; William Skepnek; and Thomas McNaboe (the "Joint Defendants"). Other defendants in the Consolidated Actions are Butera, Beausang, Cohen & Brennan, P.C.; Thompson, McNaboe, Ashley & Bull, LLC; Spohrer, Wilner, Maxwell, Maciejewski & Matthews, PA; Wright & Coon, PA; and Andrew Constantine, II. Claims against an additional defendant, Bell, Boyd & Lloyd, were dismissed.

2

recovered property benefit all unsecured creditors ratably in order for the Trustee to have standing."[2]  See Decision at 20-21.

**B.**     **Factual Background.**

The factual background of the Consolidated Actions is set forth in the Stipulation and in the Memorandum of Law supporting the Defendants' Joint Motion (the "Defendants' Joint Memorandum").  For purposes of this Motion, the Movants emphasize the following facts:

- After Raymark's liability insurer, Transit Casualty Company ("Transit"), was placed in receivership, Raymark sought to recover the face amount of its liability coverage from the Connecticut Insurance Guaranty Association ("CIGA") and engaged in litigation with CIGA (the "CIGA Litigation").  Stipulation ¶¶ 3-6.

- After Raymark was placed into involuntary bankruptcy in the Eastern District of Pennsylvania in 1989, the CIGA Litigation continued in the Pennsylvania Bankruptcy Court and was settled.  Stipulation ¶¶ 7-9.

- Concurrent with the dismissal of its 1989 Bankruptcy Case filed in the Eastern District of Pennsylvania, Raymark received from CIGA $25 million in settlement proceeds plus approximately $2.6 million in accrued investment interest (collectively, the "CIGA Settlement Proceeds"). Stipulation ¶ 18.

- Pursuant to orders of the Pennsylvania Bankruptcy Court, Raymark could use the CIGA Settlement Proceeds solely in accordance with the terms and conditions of the Transit Policies and only to pay or defend claims of tort and other claimants arising under the Transit Policies.   Stipulation ¶¶ 10-12, 16; Decision p. 5.

- The payments that the Trustee seeks to avoid in the Consolidated Actions were made from the CIGA Settlement Proceeds.   Stipulation ¶¶ 23-25, 29-31, 35-37, 41-43, 47-50, 56-59; Decision at 5.

- Some creditors of Raymark's estate are not tort claimants or claimants under the Transit Policies.  Plaintiff's Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment, dated July 5, 2002, p. 16; Plaintiff's Opposition to certain Defendants' Joint Motion to Dismiss, or in the alternative, for Summary Judgment, dated August 30, 2002, p. 15.

---

[2] Although requesting reconsideration of only part of the Decision, the Movants reserve their right to challenge any and all parts of the Decision in future proceedings.

## II. LEGAL STANDARD

A motion for reconsideration presents the court "with an opportunity to correct 'manifest errors of law or fact . . . .'" LoSacco v. City of Middletown, 822 F. Supp. 870, 876-77 (D. Conn. 1993), aff'd, 33 F.3d 50 (2d Cir. 1994) (quoting Rothwell Cotton Co. v. Rosenthal & Co., 827 F.2d 246, 251 (7th Cir. 1987)).  A motion for reconsideration will be granted if the "moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" Weinstock v. Wilk, 2004 WL 367618 (D. Conn. 2004) (quoting Shrader v. CSX Transp., 70 F.3d 255, 257 (2d Cir. 1995)).

## III. ARGUMENT

**A.      Summary of Argument.**

A trustee has standing to pursue an avoidance action only if the recovery from that action will benefit all creditors ratably.  In rejecting that fundamental principle of trustee standing as "not tenable" and an "abuse" of the Bankruptcy Code, the Court committed multiple manifest errors of law.

**B.      A Bankruptcy Trustee Has Standing to Pursue Only Claims That Benefit the Entire Creditor Body.**

A bankruptcy trustee has standing to sue in two different capacities.  First, as successor to the debtor's interests in property, the trustee has standing to assert any claims that the debtor could have asserted pre-bankruptcy.  See 3 Collier on Bankruptcy ¶ 323.03[2] (15th ed. rev. 1998).  Such claims claims encompass claims against third parties for damages caused to the debtor, including, for example, claims against the debtor's stockbroker for churning the debtor's accounts (see Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114 (2nd Cir. 1991); against

4

the debtor's fiduciaries for breach of fiduciary duty (see Mediators v. Manney (In re Mediators), 105 F.2d 822 (2nd Cir. 1997); and alter ego liability (see St. Paul Fire and Marine Ins. Co. v. Pepsico, Inc., 884 F.2d 688 (2nd Cir. 1987). Nonbankruptcy law determines whether such claims belong to the debtor or the debtor's creditors. See Hirsch v. Anderson, 72 F.3d 1085, 1092-95 (2d Cir. 1995). Second, as representative of the estate's creditors, the trustee has standing to assert avoidance claims under the Bankruptcy Code's avoiding powers. Those powers are codified at sections 544(a) and (b), 547 and 548 of the Bankruptcy Code.

The principle underlying the trustee's standing to pursue both types of claims is that the claim must benefit the entire creditor body. Indeed, that is the very criterion that courts use when determining whether or not a trustee has standing to pursue a claim that originally belonged to the debtor. See, e.g., St. Paul Fire, supra, 701; Koch Refining v. Farmers Union Central Exchange, 831 F.2d 1339, 1349 (7th Cir. 1987) (holding that the trustee's right to bring a claim depends on the action vesting in the trustee as an assignee for the benefit of all creditors rather than specific creditors); Cissel v. American Home Assurance Co., 521 F.2d 790, 793 (6th Cir. 1975), cert. denied, 423 U.S. 1074 (concluding that the trustee lacked standing to seek performance of an insurance policy because the policy would benefit specific creditors, but not all creditors of the debtor).

As to avoidance claims, the Bankruptcy Code expressly states that all creditors must benefit from recovery. To recover property upon avoiding a transfer under any of the Code's avoiding powers, including section 544(b), the trustee must find authority in section 550. Section 550 states that "to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, *for the benefit of the estate*, the

5

property transferred, or, if the court so orders, the value of such property. . . ."  11 U.S.C. § 550(a) (emphasis added).  Collier explains that

> [t]he lead-in portion of section 550(a) limits the trustee by permitting recovery only for the benefit of the estate (i.e., property which is recovered for the benefit of all unsecured creditors and not for the sole benefit of those creditors who could have avoided the transfer). . . . *Recovery will not be allowed under section 550 if the benefit is only for particular creditors as opposed to all creditors of the estate.*

5 Collier ¶ 550.02[2] (emphasis added).  Additionally, section 551 provides that "[a]ny transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title . . . is preserved for the benefit of the estate but only with respect to property of the estate."  11 U.S.C. § 551.

Applying the foregoing principles in the present action, Defendants argued in their joint motion to dismiss that the Trustee lacks standing to prosecute the avoidance claims under section 544(b) because those claims do not benefit all of Raymark's creditors.  This Court held that the requirement "that a trustee may only bring a creditor's avoidance claim under §544(b) when the benefits of the action inure to all creditors ratably . . . . is not a tenable reading of §544(b)."  Movants respectfully assert that the Court's analysis was flawed and that the Court reached its conclusion in error.

C.   **The Court's Analysis of <u>Hirsch v. Marinelli</u> Contains Multiple Errors.**

Defendants' joint motion to dismiss relied, <u>inter alia</u>, on <u>Hirsch v. Marinelli (In re Colonial Realty Co.)</u>, 168 B.R. 506 (Bankr. D. Conn. 1994).  In <u>Marinelli</u>, the Bankruptcy Court held that a bankruptcy trustee lacked standing to assert an avoidance claim based upon an avoiding power held by the Federal Deposit Insurance Corporation ("FDIC") under a federal banking statute because of the "settled bankruptcy doctrine" that "[a] trustee has standing to assert causes of action under § 544(b) only if the benefits of the action inure to all creditors

6

ratably." Id. at 510-11.  The court traced the origin of that doctrine to Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 32 L. Ed. 2d 195, 92 S. Ct. 1678 (1972) and explained that Congress, while deliberating over the proposed Bankruptcy Code, had a proposed new section that was intended to overrule Caplin.  Id. at 511.  According to the Bankruptcy Court, "[e]very circuit considering what meaning to give to the deletion of proposed § 544(c) from the final version of the [Bankruptcy Act of 1978] has concluded that Congress intended not to upset the rule announced in Caplin."  Id.

> 1. **The Court Erred in Reading Section 544(b) In Isolation From the Bankruptcy Code.**

This Court dismissed Marinelli's "interpretation" of section 544(b), stating

> The language of this provision is very plain. A trustee may avoid any transfer held by a creditor, subject to the listed conditions. The phrase "a creditor" is clearly singular and there is absolutely no textual basis for an interpretation of §544(b) that understands it to require a claim held by multiple creditors, much less all creditors. Unquestionably, there is no textual basis for concluding that a §544(b) claim must result in benefits ratable to each and every creditor-language related to the eventual distribution of benefits is nowhere part of the section.

Decision at 8.  In concluding that "there is no textual basis" for Marinelli's conclusion, the Court mistakenly isolated section 544(b) from the Bankruptcy Code sections that provide for, among other things, recovery upon avoidance.  The "language related to the eventual distribution of benefits" that the Court says "is nowhere part of [section 544(b)" is contained in sections 541, 550 and 551.  Each of those sections states that recovery is for the benefit of the estate.  Each provides the "textual basis" for concluding that section 544(b) avoidance actions must benefit all creditors ratably.  "Statutory construction of the Bankruptcy Code is a 'holistic endeavor' requiring consideration of the entire statutory scheme.'"  In re Certified Air Technologies, Inc.,

7

300 B.R. 355, 365 (Bankr. C.D. Cal. 2003) (quoting United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)). In disregarding the statutory scheme surrounding section 544(b), this Court erred.

    **2.**    **The Court Erred in Merging Two Difference Requirements for Trustee Standing Under Section 544(b).**

The Court mistakenly merged two different constraints on trustee standing under section 544(b). The limitation asserted in Defendants' papers and expressed in Marinelli is that the trustee cannot pursue avoidance actions that do not benefit all creditors ratably. Under a second, distinct, requirement, known as the "actual creditor" requirement, the trustee cannot use section 544(b) to assert a nonbankruptcy avoidance claim unless there existed on the petition date an actual creditor of the debtor who could have asserted that nonbankruptcy claim. See 5 Collier ¶ 544.09[1].

    The Court's confusion is made apparent by the following passage:

> The majority interpretation of §544(b) is that it permits a trustee to "avoid transfers that are avoidable under state law if there is at least one creditor at the time who has standing under state law to challenge the transfer." Wieboldt Stores, Inc. v. Schottenstein, 94 B.R. 488, 506 (N.D.Ill. 1988). Section 544(b) provides that "a trustee may *avoid any transfer* of an interest of the debtor in property or any obligation incurred by the debtor that is avoidable under applicable law by *a creditor holding an unsecured claim* that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." 11 U.S.C. §544(b)(emphasis added). The language of this provision is very plain. A trustee may avoid any transfer held by a creditor, subject to the listed conditions. The phrase "a creditor" is clearly singular and there is absolutely no textual basis for an interpretation of §544(b) that understands it to require a claim held by multiple creditors, much less all creditors.

Decision at 8. The Court apparently believes that the quoted language from Wieboldt Stores contradicts the Defendants' argument that the benefits of a section 544(b) action must inure to all

8

creditors ratably. In fact, Wieboldt Stores addresses the actual creditor requirement and has no bearing on the Defendants' arguments. Compliance with the "actual creditor" requirement is necessary, but not sufficient, to establish trustee standing under section 544(b). Notwithstanding the existence of an "actual creditor," the trustee has no standing unless the proceeds of the action benefit all creditors ratably. In combining those two separate and distinct requirements into a single "one creditor" test, this Court erred.

**D.     This Court Ignored the Significance of the Bankruptcy Code's Legislative History in Analyzing Trustee Standing.**

The Court failed to consider the legislative history of the Bankruptcy Code. That legislative history clearly establishes that in the aftermath of Caplin v. Marine Midland Grace Trust Co., Congress considered, but ultimately rejected, amending the Bankruptcy Code to allow trustees to pursue claims on behalf of a subset of the creditor body. This sequence of events provides evidence that the Bankruptcy Code, as it now exists, does *not* permit the claim asserted by the Trustee in the case at bar.

The sole issue in Caplin was whether the bankruptcy trustee had standing under Chapter X of the Bankruptcy Act (the counterpart to today's Chapter 11) to assert, on behalf of the debtor's debenture holders, claims of misconduct against the indenture trustee. Caplin, 406 U.S. at 416. The Court reasoned that although Congress "ha[d] established an elaborate system of controls with respect to indenture trustees and reorganization proceedings, . . . there is nothing in the section that enables [the bankruptcy trustee] to collect money not owed to the estate. . . . His task is simply to 'collect and reduce to money the property of the estates for which (he is trustee).'" Id. at 428-29. Holding that the trustee lacked standing, the court explained that its decision did not "mean that it would be unwise to confer such standing on trustees in

9

reorganization. It simply signifies that Congress has not yet indicated even a scintilla of an intention to do so, and that such a policy decision must be left to Congress and not to the judiciary." Id. at 434.

Congress considered and rejected such a policy decision while engineering the present Bankruptcy Code. When the House and Senate conferees met to reconcile the two versions of the statute, the House version included a section 544(c), originally proposed by the Report of the Commission on Bankruptcy Laws in the United States. See 5 Collier ¶ 544.LH[2][a]. According to the House Report:

> Subsection (c) is new. It overrules Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416 (1972), . . . which precluded a Chapter X trustee from enforcing a claim on behalf of debenture holders against an indenture trustee for misconduct. The trustee is permitted to act as a class representative under this provision if the trustee has no other basis on which to recover on the claim involved; recovery will reduce the claim of a class of creditors or equity security holders and will not give rise to a corresponding but offsetting right of subrogation; and enforcement of the cause of action is in the best interest of the estate. Recovery in such an action is for the benefit of the class of creditors or equity security holders on whose rights the trustee has based the action.

H.R. Rep. No. 95-595, September 8, 1977 (footnote omitted). Section 544(c) was dropped from the final version of the Code that emerged from the House-Senate Conference and was passed by Congress.

As stated in Defendants' First Memorandum, Courts uniformly construe the deletion of proposed section 544(c) as a signal that Congress intended to leave the Caplin rule untouched. See, e.g., Koch, 831 F.2d at 1347 n. 11; DSQ Property Co., Ltd. v. DeLorean, 891 F.2d 128, 131 (6th Cir. 1989). The Marinelli court considered the Code's legislative history and observed that "[e]very circuit considering what meaning to give to the deletion of proposed § 544(c) from the

10

final version of the act has concluded that Congress intended not to upset the rule announced in Caplin." Marinelli, 168 B.R. at 511. Surprisingly, this Court's Decision makes no mention of legislative history. Indeed, ignoring the references to Congress' intent in the papers before it, the Court asserts:

> This court should not, as it necessarily would it if adopts the statutory interpretation of Marinelli, re-write the Bankruptcy Code. Federal courts are not licensed to "usurp the policy-making and legislative functions of duly elected representatives." Heckler v. Mathews, 465 U.S. 728, 741 (1984).

Decision at 9. However, "[w]ithout textual evidence that Congress intended to change the law, pre-1978 precedent remains persuasive to courts interpreting the Code." In re Boston Regional Medical Center, Inc., 291 F.3d 111, 120 (1st Cir. 2002) (citing Dewsnup v. Timm, 502 U.S. 410, 419, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992) ("When Congress amends the bankruptcy laws, it does not write 'on a clean slate.' ")). In failing even to acknowledge the existence of relevant legislative history or judicial interpretations thereof, while refusing, emphatically, to usurp Congress' role, this Court erred.

E.   **The Court's Reading of Caplin is Unprecedented.**

Additionally, this Court's reading of Caplin has no decisional precedent. According to the Court

> [t]he trustee in Caplin sought to recover, for the estate, the common law damages alleged by a creditor against the third-party. Thus, a "claim" under Caplin is a claim that might be brought by a creditor against a third-party as an independent action for damages. Later cases applying Caplin have, almost uniformly, dealt with similar situations [citing to Shearson, Andersen, Mediators]. . . .

Decision at 9. Thus, this Court seems to confine Caplin to its facts. In contrast, other courts analyzing Caplin concluded that either (1) Caplin permits the trustee to bring claims that accrue

11

to all creditors but deny the trustee standing to bring claims accruing to specific creditors, see, e.g., In re Teligent, 307 B.R. 744, 749 (Bankr. SDNY 2004) (Section 544 "does not extend beyond avoidance actions, and does not permit [the trustee] to assert the personal, direct claims of creditors for the benefit of the estate or a particular class of creditors.") (quoting In re Granite Partners, 194 B.R. 318, 324 (Bankr. SDNY 1996)); Koch, 831 F.2d 1348-49 (trustee only has standing to bring general claims of creditors under section 544), or (2) Caplin prevents a bankruptcy trustee from bringing *any* claim of a creditor.  See, e.g., In re Ozark, 816 F.2d 1222, 1228 ("Congress' message is clear—no trustee . . . has power under . . . the Code to assert general causes of action . . . on behalf of the bankrupt estate's creditors.") (8th Cir. 1987), cert. denied, Jacoway v. Anderson, 484 U.S. 848 (1987); Williams v. California 1st Bank, 859 F.2d 664, 667 (9th Cir. 1988)(same).  There simply is no precedent for this Court's reading of Caplin.

The Court tries to distinguish the instant case from others in which Caplin was held to bar trustee standing on the grounds that "none of these decisions involved a claim for avoidance under a state fraudulent transfer law" and "none of these courts considered or interpreted § 544(b)."  Decision at 10.  In focusing on the nature of the underlying claim, the Court loses sight of the main issue:  hether the lawsuit will, if successful, benefit all the estate's creditors or only certain creditors.  That inquiry is grounded in the Supreme Court's reasoning in Caplin and, if the claim question is an avoidance claim, in Bankruptcy Code sections.  By contrast, the distinction this Court proposes has no principled basis.

The Court acknowledged that under Caplin, section 544(a) has been held not to grant a trustee the power to bring a creditor's claim against third parties.  Decision at 10, citing Shadduck v. Shadduck, 208 B.R. 1, 4-5 (Bankr. D.Mass. 1997).  The Court goes on to say that

> [t]he Shadduck court noted that Caplin specifically does not affect the interpretation of §544(b), as that section 'clearly grants avoidance rights.' . . . .Here, unlike in Shadduck, the trustee is bringing an avoidance claim and there is a specific statutory authority for the action.

Decision at 10. In so stating, the Court reveals that it has misread Shadduck. The Shadduck court held that Caplin barred the trustee from asserting claims against the Debtor's exempt assets because those claims belonged to creditors and were not property of the bankruptcy estate. Id. The Shadduck court explained that, just as the Supreme Court in Caplin could find no statutory authority under the Bankruptcy Act for a trustee to prosecute creditors' claims that are not part of the estate, the Shadduck court find no such authority under the Code. Id. at 4-5. In dicta, the Court noted that section 544(a) "comes the closest" to providing such authority, but did not apply to the case at hand because the trustee was not pursuing his rights as a hypothetical lien creditor. Id. at 4. The Shadduck court further observed that, under the facts before it, section 544(b) offered no help to the trustee because "that subsection clearly grants avoidance rights only" and the trustee was not seeking to pursue an avoidance claim. Shadduck's reference section 544(b) was unrelated to its discussion of Caplin. In no way does Shadduck stand for the proposition that "Caplin specifically does not affect the interpretation of § 544(b)"; in fact, Shadduck states that Congress decided not to adopt "a proposed subsection of section 544 which would have expressly given a trustee the limited rights to assert creditors' claims. With that signal from Congress, it is unwarranted to read into section 544(a) the grant of an implied power to bring a creditor's cause of action." Shadduck at 4-5.

Indeed, under Shadduck the Trustee would not have standing in the case at hand, because the First Circuit interprets Caplin broadly, as barring all trustee prosecution of creditor claims. See Shadduck at 5 (disagreeing with decisions, including Marinelli, holding that a trustee may

13

prosecute creditors' claims if those claims are held by all creditors, because "[a] trustee's difficulty in these cases is lack of statutory authority to bring *any* creditor claim, whether the claim is held by some or all creditors.") (emphasis added).

## IV. CONCLUSION

For the foregoing reasons, Defendants Sullivan, Hill, Lewin, Rez, Engel and Labazzo; Nelson, Mullins, Riley and Scarborough, L.L.P.; and Tom Riley Law Firm, P.L.C. respectfully request that the Court grant their Motion for Reconsideration.

Dated at Wethersfield, Connecticut, this 29th day of October, 2004.

**DEFENDANTS, SULLIVAN, HILL, LEWIN, REZ, ENGEL & LABAZZO; NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P.; AND THE TOM RILEY LAW FIRM, P.L.C.**

By /s/
    Alan Robert Baker (ct05623)
    William J. O'Sullivan (ct08452)
    Denise R. Polivy (ct19676)
    Shannon R. Tracy (ct25905)
    Baker O'Sullivan & Bliss PC
    Putnam Park, Suite 100
    100 Great Meadow Road
    Wethersfield, CT 06109-2371
    Phone (860) 258-1993
    Fax (860) 258-1991